# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, | |
| Plaintiffs, | Civil Action No. 6:20-cv-624 |
| v. | **JURY TRIAL DEMANDED** |
| HP INC., | |
| Defendant. | |

## DEFENDANT HP INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     U.S. PATENT NO. 7,038,819:  THE TERM "ADJUSTABLE SUPPRESSION
        MECHANISM" REQUIRES A POWERED MECHANISM. .......................................... 1

        A.      Overview of the '819 Patent. ................................................................. 1

        B.      The Term "adjustable suppressing mechanism" Requires A Powered Adjustable
                Suppressing Mechanism. ........................................................................ 4

III.    U.S. PATENT NO. 8,427,716:  THE RECITED "CIRCUITRY" TERMS ARE MEANS-
        PLUS-FUNCTION TERMS. .................................................................................. 10

        A.      Overview of the '716 Patent. ................................................................. 10

        B.      The "circuitry" Terms Are Means-Plus-Function Terms That Lack
                Corresponding Structure in the Specification. ........................................ 11

IV.     CONCLUSION .................................................................................................... 20

WEST\292996895.5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*01 Communique Lab., Inc. v. LogMeIn, Inc.*,
   687 F.3d 1292 (Fed. Cir. 2012)........................................................................9

*In re Abbott Diabetes Care Inc.*,
   696 F.3d 1142 (Fed. Cir. 2012)........................................................................7

*Ancora Techs., Inc. v. LG Elecs. Inc.*,
   No. 1-20-CV-00034-ADA, 2020 WL 4825716 (W.D. Tex. Aug. 19, 2020) ........................4, 5

*Apex Inc. v. Raritan Computer, Inc.*,
   325 F.3d 1364 (Fed. Cir. 2003)........................................................12, 13, 14, 15

*CCS Fitness, Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002)........................................................................8

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
   No. 2:14-CV-0911-JRG-RSP, 2015 WL 6956722 (E.D. Tex. Nov. 9, 2015) ........................16

*Digital Retail Apps, Inc. v. H-E-B, LP*,
   No. 6-19-CV-00167-ADA, 2020 WL 376664 (W.D. Tex. Jan. 23, 2020) ............................5

*Eon Corp. IP Holdings v. Silver Spring Networks*,
   815 F.3d 1314 (Fed. Cir. 2016)........................................................................4

*Hill-Rom Services, Inc. v. Stryker Corp.*,
   755 F.3d 1367 (Fed. Cir. 2014)........................................................................8

*Home Diagnostics, Inc. v. LifeScan, Inc.*,
   381 F.3d 1352 (Fed. Cir. 2004)........................................................................9

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
   540 F.3d 1337 (Fed. Cir. 2008)........................................................................9

*Int'l Corp. v. Unique Prod. Mfg. Ltd.*,
   No. 08 CIV. 5086 (DLC), 2009 WL 1424178 (S.D.N.Y. May 21, 2009) ............................16

*Intellicheck Mobilisa, Inc. v. Honeywell Int'l Inc.*,
   No. C16-0341JLR, 2017 WL 6550700 (W.D. Wash. Dec. 21, 2017) ..................................16

*Intelligent Automation Design, LLC v. Zimmer Biomet CMF & Thoracic*,
   LLC, 799 F. App'x 847 (Fed. Cir. 2020) (unpublished)........................................15

ii

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
175 F.3d 985 (Fed. Cir. 1999)........................................................................................9

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)........................................................................................8

*Lighthouse Consulting Group, LLC v. BB&T Corp.*,
476 F. Supp. 3d 532 (2020) ........................................................................................4, 5

*Linear Tech. Corp. v. Impala Linear Corp.*,
379 F.3d 1311 (Fed. Cir. 2004)...............................................................................13, 15

*Massachusetts Inst. of Tech. v. Abacus Software*,
462 F.3d 1344 (Fed. Cir. 2006)....................................................................................14

*Micro Motion, Inc. v. Krohne, Inc.*,
No. 09CV10319-NG, 2011 WL 386837 (D. Mass. Feb. 3, 2011)..........................15

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)......................................................................................4

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)......................................................................................6

*Pisony v. Commando Constr., Inc.*,
No. W-17-CV-00055-ADA, 2019 WL 928406 (W.D. Tex. Jan. 23, 2019) .............8

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
711 F.3d 1348 (Fed. Cir. 2013)...............................................................................14, 15

*Profectus Tech. LLC v. Huawei Techs. Co.*,
823 F.3d 1375 (Fed. Cir. 2016)......................................................................................7

*Realtime Data LLC v. Rackspace US, Inc. et al.*,
6-16-cv-00961-RWS-JDL, slip op. (E.D. Tex. Jun. 14, 2017) (Opp. Br. Ex. C) .............17, 18

*Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*,
No. C 13-05184 SBA, 2016 WL 8902602, at *13 (N.D. Cal. Nov. 23, 2016)................16, 17

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)......................................................................................9

*Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015)..................................................................13, 14, 15, 18

*Wisconsin Alumni Research Foundation v. Apple Inc.*,
905 F.3d 1341 (Fed. Cir. 2018)...................................................................................6, 7

iii

## I.      INTRODUCTION

In this case, the Court need only resolve two claim construction disputes. For the '819 patent, the Court should determine that the recited "adjustable suppressing mechanism" must be powered, because (1) the claim language necessarily implies that the mechanism is powered, and (2) a powered adjustable suppressing mechanism is essential to the purported invention, as it would only work with a powered mechanism. For the "circuitry" terms of '716 patent, the Court should find those terms are means-plus-function terms that lack corresponding structure in the specification, because (1) the claims recite the bare word "circuitry" without any adjectival qualifier or any other recitation of structure, and (2) the claims and specification recite and disclose only function, not structure. Furthermore, the Patent Office has already found these terms to be means-plus-function terms.

## II.     U.S. PATENT NO. 7,038,819:  THE TERM "ADJUSTABLE SUPPRESSION MECHANISM" REQUIRES A POWERED MECHANISM.

### A.      Overview of the '819 Patent.

The '819 patent relates to an automatic document feeder for use in an image scanner, such as illustrated in Figure 4A of the patent:



(Annotated in color.) According to the patent, prior art scanners had problems handling objects of varying thicknesses. The patent discloses that objects of different thicknesses going through

1

the automatic document feeder would have different "depth of field heights" from the scanning

window, which can cause problems with scanning quality, as illustrated in Figures 3A and 3B:



*See also id.* at 2:18-35 (figures annotated in color.) As shown in Figure 3A, a thinner object

travels through the automatic document feeder at a longer depth of field height from the scanning

window as compared to the thicker object in Figure 3B. To ensure that an optimal depth of field

height is used for any object that passes through the feeder, the patent adds an "adjustable

suppressing mechanism" at a position corresponding to the scanning window:



*See also id*. at 4:26-39 (figure annotated in color). When an object is fed into the automatic

document feeder, "a depth of field height h of the object to be scanned that passes through the

scanning window is adjusted by the adjustable suppressing mechanism." *Id.* at 4:41-46.

2

The '819 patent discloses four embodiments for the adjustable suppressing mechanism, illustrated in Figures 5A-5D:



*See also id.* at 4:58-5:40 (figures annotated in color). The specification describes all four embodiments as having a power source. *See id.* at 4:62-64 ("the adjustable suppressing mechanism 3 includes a power source 31...."). The first two embodiments (Figs. 5A and 5B) use power "for driving the cam 331 or the eccentric wheel 332 to generate rotary displacement variation to become different angle positions corresponding to various lengths for changing the depth of field height h." *Id.* at 5:6-11. The third embodiment (Fig. 5C) uses a powered motor to drive movement of a rack. *Id.* at 5:23-28. The fourth embodiment (Fig. 5D) uses power to drive movement of a connection rod and gliding block. *Id.* at 5:32-36.

**B.    The Term "adjustable suppressing mechanism" Requires A <u>Powered</u> Adjustable Suppressing Mechanism**.

| Claim | Term | HP's Construction | IV's Proposed Construction |
|---|---|---|---|
| 1 | "adjustable suppressing mechanism" | "<u>powered</u> adjustable suppressing mechanism" | No construction necessary. |

**1.    The Court should resolve the parties' dispute about claim scope**.

The Court should construe "adjustable suppressing mechanism" to resolve a clear dispute about claim scope. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). And because the extent of the parties' dispute is whether "adjustable suppressing mechanism" must be powered, the Court should construe that term solely to the extent necessary to resolve that dispute. *See Lighthouse Consulting Group, LLC v. BB&T Corp.*, 476 F. Supp. 3d 532 (W.D. Tex. 2020). In *Lighthouse*, the parties disputed whether a "carrier" "must be a physical or tangible object." *Id.* at 541. This Court held it was "not necessary to fully construe the meaning of 'carrier,'" and construed it only "to the extent required to determine if a 'carrier' must be a physical or tangible object." *Id.* Similar to *Lighthouse*, HP requests that the Court construe "adjustable suppressing mechanism" solely to confirm it must be powered.

IV invites legal error by urging the Court to leave "adjustable suppressing mechanism" unconstrued. *See Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314 (Fed. Cir. 2016). In *Eon*, the district court declined to construe the terms "portable" and "mobile," finding that "their meanings are clear in the context of the claims and will be readily understandable to the jury." *Id.* at 1317. Reversing, the Federal Circuit held the district court erred in giving the terms their plain and ordinary meanings, because that "left [the] question of claim scope unanswered, leaving it for the jury to decide." *Id.* at 1319 (citing *O2 Micro*, 521 F.3d at 1362). Indeed, in the *Ancora* case IV cites, this Court construed the term "license record," noting that

4

"[b]ecause the Parties disagree about the scope of the term, the term requires construction by the Court." *Ancora Techs., Inc. v. LG Elecs. Inc.*, No. 1-20-CV-00034-ADA, 2020 WL 4825716, at *9 (W.D. Tex. Aug. 19, 2020) (construing "license record" to be "associated with 'a licensed program,' as opposed to merely 'a program'" based on the specification, even though the specification "never defines" the term); *see also Digital Retail Apps, Inc. v. H-E-B, LP*, No. 6-19-CV-00167-ADA, 2020 WL 376664, at *9-10 (W.D. Tex. Jan. 23, 2020) (construing "wirelessly transmitting" to exclude "photographing or otherwise scanning a code because the specification makes clear the two are distinct"). Thus, that a term may be made up of "common-English words" is no reason to leave it unconstrued, and the Court should construe "adjustable suppressing mechanism" to resolve the parties' dispute about its scope.

### 2.    A powered "adjustable suppressing mechanism" is required by the context of the claims and is essential to the disclosed invention.

For several reasons, HP's construction is correct in view of the intrinsic evidence.

<u>First</u>, the context of the claim language requires that the "adjustable suppressing mechanism" be powered, because the claims recite capabilities that are only possible if the mechanism is powered. The term must be construed to reflect this proper scope. *See Lighthouse*, 476 F. Supp. 3d at 541-42 (context of the claims requires "carrier" to be a physical object).

The term "adjustable suppressing mechanism" appears in both independent claim 1, an apparatus claim, and independent claim 11, a method claim. Claim 1 recites:

> A depth of field adjustment device for an automatic document feeder, the automatic document feeder having a guiding groove, the guiding groove having a scanning window at an appropriate position, the scanning window to allow an optical chassis to obtain an image of an object to be scanned that passes through the guiding groove, said depth of field adjustment device comprising:
>
> an <u>adjustable suppressing mechanism</u>, said adjustable suppressing mechanism corresponding to the scanning window at an appropriate position of the guiding groove, wherein a <u>depth of field</u>

5

> height of the object to be scanned that passes by the scanning
> window is adjustable by the adjustable suppressing mechanism.

(Emphasis added.) Independent claim 11 recites:

> A depth of field adjustment method for an automatic document
> feeder, comprising:
>
> feeding in a pre-scanned object to be located between an adjustable
> suppressing mechanism and a scanning window;
>
> adjusting a depth of field height by the adjustable suppressing
> mechanism;
>
> obtaining an image of the pre-scanned object;
>
> comparing the image of the pre-scanned object with a pre-stored
> image to decide a desired depth of field height;
>
> setting the adjustable suppressing mechanism at the desired depth
> of field height.

(Emphasis added.) Both claims require that a depth of field height is adjusted "by the adjustable

suppressing mechanism." Claim 11 further requires deciding a "desired" height based on the

comparison of two images, and then setting the mechanism at that height. If the "adjustable

suppressing mechanism" were not powered, these claimed functions could not be performed.

Second, the specification, read as a whole, makes clear that the invention requires a

powered "adjustable suppressing mechanism." *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313

(Fed. Cir. 2005) ("the person of ordinary skill in the art is deemed to read the claim term not only

in the context of the particular claim in which the disputed term appears, but in the context of the

entire patent, including the specification."). This dispute is similar to one recently addressed by

the Federal Circuit in *Wisconsin Alumni Research Foundation v. Apple Inc.* ("*WARF*"), 905 F.3d

1341, 1351 (Fed. Cir. 2018). *WARF* concerned the meaning of "prediction" in a patent relating to

instruction processing by a computer processor. The Federal Circuit held that "[r]eading the

patent as a whole, it is clear that the claimed prediction must be capable of receiving updates"

6

where the specification "repeatedly and consistently" characterizes the term that way, and no portion of the specification describes a "static prediction." *Id.* The Court thus construed "prediction" as being limited to a "dynamic prediction." *Id.* Similarly, in *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1381 (Fed. Cir. 2016), the Federal Circuit held that "the district court properly construed 'mountable' to mean 'having a feature for mounting'" where "[i]n every embodiment disclosed in the specification, the picture display or frame includes a feature for mounting the device to a wall or on a tabletop." *See also In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1149-50 (Fed. Cir. 2012) (construing "electrochemical sensor" as "a discrete electrochemical sensor devoid of external connection cables or wires to connect to a sensor control unit" where "every embodiment disclosed in the specification shows an electrochemical sensor without external cables or wires").

Here, the '819 patent repeatedly and consistently characterizes an "adjustable suppressing mechanism" as a powered device. As demonstrated above, the '819 patent discloses four embodiments for the structure of the adjustable suppressing mechanism, and describes and illustrates each one as having parts driven by a power source to adjust the depth of field height. *See* '819 patent at 5:62-6:16 (transmission belt transfers power to drive a car or an "eccentric wheel"); 5:17-27 (powered motor moves a rack); 5:28-36 (connection rod transfers power to move a gliding block). The '819 patent does not disclose any non-powered embodiments, nor does it even suggest how an adjustable suppressing mechanism could make adjustments without power. Further, the sole process embodiment of the patent entails steps that can only be performed with a powered "adjustable suppressing mechanism," including adjusting the mechanism multiple times to identify an optimal depth of field height, then setting the mechanism at the desired height. *See id.* at 6:22-41 & Fig. 7. The patent does not disclose or

7

even suggest how this process could be performed with a non-powered adjustable suppressing mechanism. The only conclusion to draw when reading the '819 patent as a whole is that "adjustable suppressing mechanism" must be powered.

Because a powered "adjustable suppressing mechanism" is essential to the invention of the '819 patent, the dispute before the Court differs from cases IV cites, in which courts declined to construe claims to include a particular feature where that feature was not important, essential, or necessary to the invention. *See Hill-Rom Services, Inc. v. Stryker Corp.*, 755 F.3d 1367, 1373 (Fed. Cir. 2014) (no basis to limit the term "absent some language in the specification or prosecution history suggesting that the wired connection is important, essential, necessary, or the 'present invention'"); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 908 (Fed. Cir. 2004) (the specification "does not suggest that a pressure jacket is an essential component of the invention"); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1363-64 (Fed. Cir. 2002) ("reciprocating member" is not limited to a "single-component straight bar" as depicted in the figures, because nothing in the claims or description sets forth the shape or makeup of these structures); *Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 WL 928406, at *4 (W.D. Tex. Jan. 23, 2019) ("extendible mast" was not required to be vertical even though the figures showed only a vertical mast, because the intrinsic record was otherwise devoid of any "limit on or even discussion of any specific orientation of the extendible mast").

In the cases IV cites, the inclusion of a particular feature in an embodiment, such as the "straight bar" of *CCS* or the "vertical mast" of *Pisony*, was incidental to the invention and did not justify limiting the claims to that feature. Here, in contrast, a powered "adjustable suppressing mechanism" is the very basis of the alleged invention of the '819 patent, because none of its disclosed embodiments would work without it. The term should be construed accordingly.

8

Finally, several of IV's cited cases stand for the proposition that a construction must be consistent with the claims and specification. *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1367-68 (Fed. Cir. 2012); *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1357 (Fed. Cir. 2004); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 991 (Fed. Cir. 1999). HP agrees. The claims and specification of the '819 patent make clear the "adjustable suppressing mechanism" must be powered.

### 3.    The "intent" of the patentee's "claiming style" cannot change the scope of "adjustable suppressing mechanism."

IV points out that claim 2 recites a "power source" and argues that "the patentee's own claiming style further demonstrates that it did not intend to limit 'adjustable suppressing mechanism' to a 'powered adjustable suppressing mechanism.'" Br. at 7. However, claims must be construed objectively, and "the subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim." *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1346 (Fed. Cir. 2008) (quotation omitted). The principle that a claim term's scope must be commensurate with the patent's disclosure trumps any "claiming style." *See 01 Communique Lab., Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1296 (Fed. Cir. 2012) (district court correctly incorporated four functions into the construction of "location facility," even though patentee had argued that "because those functions are set forth expressly in the claim, it would be 'redundant and unnecessary' to incorporate them into the construction" of the term). Thus, no matter what the '819 patent recites in claim 2, it cannot enlarge the scope of "adjustable suppressing mechanism."

In any event, contrary to IV's argument, it makes perfect sense for claim 1 to recite a "powered adjustable suppressing mechanism" while claim 2 also recites "a power source." Claim 2 recites several other limitations, including "a transmission unit, is capable of connecting to the

9

power source." Claim 2 is directed to a particular configuration of the powered adjustable suppressing mechanism of claim 1, and the recited "power source" provides further context and an antecedent basis for the subsequent limitations of claim 2. Thus, there is no conflict between these two claims under HP's correct construction.

## III.   U.S. PATENT NO. 8,427,716:  THE RECITED "CIRCUITRY" TERMS ARE MEANS-PLUS-FUNCTION TERMS.

### A.   Overview of the '716 Patent.

The '716 patent purports to disclose an improved scanning system. '716 patent at Abstract. A preview scan of an item is performed by a scanner, and an image of the item is displayed in a preview window on a screen. *Id.*, Abstract, Figure 2A, 3:53-54, 4:10-13. The system can automatically identify one or more objects in the preview and can enclose those objects in a boundary to establish a scan area within the boundary. *Id.* at Abstract; Fig. 2A; 4:27-35. The system then performs a scan of the scan area. *Id.* at Abstract; Fig. 2A; 4:36-39.

The specification discloses no structure, instead describing functions and steps. In fact, although the claims are apparatus claims, the patent is titled "Method for Automatically Identifying a Scan Area," and the Abstract discloses a method: "In accordance with the present invention, a method for automatically identifying a scan area by a scanner is disclosed… ." *Id.* at Abstract. Figure 4 does not depict structure either, but rather a series of empty boxes with labels in them:



### B. The "circuitry" Terms Are Means-Plus-Function Terms That Lack Corresponding Structure in the Specification.

| Claim | Term | HP's Proposed Construction |
|---|---|---|
| 8 | "circuitry configured to generate a preview of a scanned original" | This is a means-plus-function element.<br><br>The recited function is "to generate a preview of a scanned original."<br><br>The specification does not clearly link or associate any corresponding structure for performing the recited function; therefore, the term is indefinite. |
| 8 | "circuitry configured to determine a scan area based, at least in part, on a confined area associated with the one or more objects and on a removal of portions of the preview window that are beyond the confined area" | This is a means-plus-function element.<br><br>The recited function is "to determine a scan area based, at least in part, on a confined area associated with the one or more objects and on a removal of portions of the preview window that are beyond the confined area."<br><br>The specification does not clearly link or associate any corresponding structure for performing the recited function; therefore, the term is indefinite. |
| 8 | "circuitry configured to scan the scan area after the portions are removed" | This is a means-plus-function element.<br><br>The recited function is "to scan the scan area after the portions are removed."<br><br>The specification does not clearly link or associate any corresponding structure for performing the recited function; therefore, the term is indefinite. |
| 12 | "circuitry configured to generate a single profile for a plurality of objects" | This is a means-plus-function element.<br><br>The recited function is "to generate a single profile for a plurality of objects."<br><br>The specification does not clearly link or associate any corresponding structure for performing the recited function; therefore, the term is indefinite. |
| 14 | "circuitry configured to generate a preview window of a scanned original comprising one or more objects" | This is a means-plus-function element.<br><br>The recited function is "to generate a preview window of a scanned original comprising one or more objects." |

11

| | | The specification does not clearly link or associate any corresponding structure for performing the recited function; therefore, the term is indefinite. |
|---|---|---|
| 14 | "circuitry configured to identify portions of the preview window that are located outside of the confined area" | This is a means-plus-function element.<br><br>The recited function is "to identify portions of the preview window that are located outside of the confined area."<br><br>The specification does not clearly link or associate any corresponding structure for performing the recited function; therefore, the term is indefinite. |
| 14 | "circuitry configured to define a scan area to include the profile with the portions removed" | This is a means-plus-function element.<br><br>The recited function is "to define a scan area to include the profile with the portions removed."<br><br>The specification does not clearly link or associate any corresponding structure for performing the recited function; therefore, the term is indefinite. |
| 14 | "circuitry configured to scan the scan area" | This is a means-plus-function element.<br><br>The recited function is "to scan the scan area."<br><br>The specification does not clearly link or associate any corresponding structure for performing the recited function; therefore, the term is indefinite. |
| 15 | "circuitry configured to determine the profile and the location based, at least in part, on information obtained from the scanned original" | This is a means-plus-function element.<br><br>The recited function is "to determine the profile and the location based, at least in part, on information obtained from the scanned original."<br><br>The specification does not clearly link or associate any corresponding structure for performing the recited function; therefore, the term is indefinite. |

The nine "circuitry" limitations identified above are means-plus-function limitations. Although the Federal Circuit has found the term "circuitry" connotes some structure, it has refused to hold that the term "circuitry" always discloses sufficient structure to avoid means-plus-function treatment. *See Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1373 (Fed. Cir.

WEST\292996895.5

2003) ("[W]e do not find it necessary to hold that the term 'circuit' by itself always connotes sufficient structure… ."). Instead, the Federal Circuit has found sufficient structure in a "circuitry" claim only where the claim adds adjectival qualifiers to "circuitry," such as "interface circuitry" or "programming circuitry." *See id.* ("the term 'circuit' with an appropriate identifier such as 'interface,' 'programming' and 'logic,' certainly identifies some structural meaning"). The Federal Circuit also has found sufficient structure in a claim that recites "circuitry" but also recites the circuit's operation in sufficient detail to suggest structure. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004) ("when the structure-connoting term 'circuit' is coupled with a description of the circuit's operation, sufficient structural meaning generally will be conveyed to persons of ordinary skill in the art").

The Federal Circuit, however, has not yet confronted the types of "circuitry" terms recited in the '716 patent, where: (1) the claim recites "circuitry" without any adjectival qualifiers or any recitation of the structure of that circuitry; (2) the "circuitry" terms form the entire claim aside from the preamble; and (3) the specification does not disclose circuitry and does not even use the word "circuitry." These claims, in fact, are the very situation the Federal Circuit left open to future rulings in *Apex*—that is, "circuitry" terms that neither recite nor suggest structure. The Court, therefore, should find these "circuitry" terms to be means-plus-function terms lacking corresponding structure in the specification.

> **1.** **Under controlling Federal Circuit jurisprudence, the '716 patent claims should be treated as means-plus-function claims**.

In 2015, the Federal Circuit held that if a limitation does not recite the word "means," there is a rebuttable presumption that it is not a means-plus-function limitation. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348-49 (Fed. Cir. 2015) (overruling "strict requirement of a showing that the limitation essentially is devoid of anything that can be construed as structure").

WEST\292996895.5

The *Williamson* presumption can be overcome if the term "fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Id.* (internal citations omitted). A party must establish the claims are governed by § 112, ¶ 6 by a preponderance of the evidence. *Apex*, 325 F.3d at 1372.

The Federal Circuit has confronted "circuitry" terms before, but not ones like those recited in the '716 patent. In *Apex*, the Federal Circuit concluded, "[w]hile we do not find it necessary to hold that the term 'circuit' by itself always connotes sufficient structure, the term 'circuit' with an appropriate identifier such as 'interface,' 'programming' and 'logic,' certainly identifies some structural meaning to one of ordinary skill in the art." *Id.* at 1373. And in *Massachusetts Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1355-56 (Fed. Cir. 2006), the Federal Circuit found that "aesthetic correction circuitry" connoted sufficient structure where the claim "add[ed] further structure by describing the operation of the circuit," specifically that "[t]he circuit's input is 'appearance signals' produced by the scanner; its objective is to 'interactively introduc[e] aesthetically desired alterations into said appearance signals'; and its output is 'modified appearance signals.'" *Id.* at 1356.

In *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1365 (Fed. Cir. 2013), the Federal Circuit found that "soft start circuit" connoted sufficient structure because it "performs a straightforward function when a simple test is met: it 'provides a signal' that cuts off the drive signal 'when said magnitude of said oscillation signal is greater than a magnitude of said frequency variation signal.'" However, the Federal Circuit clarified that "not just any adjectival qualification or functional language will suffice." *Id.* at 1364-65. "The proper inquiry is whether the claim limitation itself, when read in light of the specification, connotes to the ordinarily skilled artisan sufficiently definite structure for performing the identified

14

functions." *Id.* at 1365 (citing *Apex*, 325 F.31 at 1373); *see also Linear Technology*, 379 F.3d at 1320 ("a first circuit for monitoring a signal from the output terminal to generate a first feedback signal" was not means-plus-function, because the claim recited the objective and desired output of the circuit).

Indeed, in *Intelligent Automation Design, LLC v. Zimmer Biomet CMF & Thoracic*, LLC, 799 F. App'x 847, 850-51 (Fed. Cir. 2020) (unpublished), the Federal Circuit found a "circuitry" term to be a means-plus-function limitation despite the presence of the adjectival qualifier "control" before "circuitry" (construing the term "a control circuit for determining a time when the torque reaches a maximum"). The Federal Circuit held that "control circuit" did not "provide enough description of the structure to render the limitation structural rather than functional." *Id.* at 851 (citing *Power Integrations*, 711 F.3d at 1364-65).

### 2.    The "circuitry" limitations in the '716 patent contain no adjectival qualifiers and do not recite structural features.

The nine "circuitry" limitations in the '716 claims recite the word "circuitry" without any adjectival qualifier. These limitations also recite functions, but do not recite any structural features of the circuitry, such as input or output signals. Under the Federal Circuit jurisprudence discussed above, each limitation is a means-plus-function limitations because each one fails to "recite sufficiently definite structure" and recites only "function without reciting sufficient structure for performing that function." *Williamson*, 792 F.3d at 1348. In fact, the '716 claims recite no structure other than the bare word "circuitry."

The district court cases IV cites follow the Federal Circuit's jurisprudence and do not save these nine limitations from means-plus-function treatment. In several cases, district courts found that a "circuit" or "circuitry" term connoted sufficient structure because they recited an adjectival qualifier—which the '716 claims do not. *See Micro Motion, Inc. v. Krohne, Inc.*, No.

15

09CV10319-NG, 2011 WL 386837, at *10 (D. Mass. Feb. 3, 2011) ("protection circuitry"); *P3 Int'l Corp. v. Unique Prod. Mfg. Ltd*., No. 08 CIV. 5086 (DLC), 2009 WL 1424178, at *6 (S.D.N.Y. May 21, 2009) ("control circuit"). In other cases, the district courts found that a claim recited other structural detail or circuitry for performing the function in sufficient detail to avoid means-plus-function treatment. In *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,* No. 2:14-CV-0911-JRG-RSP, 2015 WL 6956722, at *18 (E.D. Tex. Nov. 9, 2015), the claim terms at issue—unlike the "circuitry" terms here—recited structural detail about the components with which the circuitry communicated; that is, "circuitry operable to send a request for location finding information from a mobile station as a message <u>through the network to a location message server</u>" and "circuitry operable to <u>receive from the location message server</u>, a message containing location finding information based on the cell occupied by at least one mobile station." *Id*. at *18 (emphasis added). The '716 patent claims recite no such structural components, but rather merely recite functions—for claim 8, the functions are "generate a preview," "determine a scan area," and "scan the scan area." Thus, the '716 claims are nothing like the claims in *Core Wireless*.

Furthermore, in *Intellicheck Mobilisa, Inc. v. Honeywell Int'l Inc*., No. C16-0341JLR, 2017 WL 6550700, at *4 (W.D. Wash. Dec. 21, 2017), the court found that "the contextual language in Claim 1 further describes the circuitry's operation: to determine whether the read information comports with a predetermined format and to output the read information to a remote location for further processing." In *Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. C 13-05184 SBA, 2016 WL 8902602, at *13 (N.D. Cal. Nov. 23, 2016), the claim recited an apparatus "for displaying an enhanced version of an image conveyed by a signal" that includes a "<u>fill calculator circuit</u> coupled to said neighboring circuit to determine if said neighboring

16

elements, including said central element[,] match known patterns of elements." (Emphasis added.) The court found the claim "describes how the fill calculator circuit 'interacts with other components' of the apparatus, i.e., the neighboring circuit, to perform the stated function." *Id*. In *Realtime Data LLC v. Rackspace US, Inc. et al*., 6-16-cv-00961-RWS-JDL, slip op. at 26 (Dkt. No. 183) (E.D. Tex. Jun. 14, 2017) (Opp. Br. Ex. C), the court found that a "circuits" limitation was sufficiently structural where the claim recited that "the first and third circuits operate to analyze data blocks for recognition of certain criteria" and "the second and fourth circuits apply compression algorithms to particular data blocks based on the criteria recognition."

Here, in contrast to these decisions, the "circuitry" limitations make up the entire claims of the '716 patent other than their preambles. Thus, the "circuitry" terms cannot possibly convey structure to a person of ordinary skill in the art, because any alleged novelty of the claims must reside in one or more of those "circuitry" terms. If the recited "circuitry" is indeed novel, then as a matter of law and logic, its structure would not be known to a person of ordinary skill in the art.

### 3. The Patent Office has already found the "circuitry" terms to be means-plus-function terms.

Notably, the Patent Office has already found the nine "circuitry" terms to be means-plus-function terms. Two years after the '716 patent issued, IV filed an application for a broadening reissue. *See* Ex. A, Reissue Appl. No. 14/694,653, at pp. 1-21. IV presented issued claims 1-20 and new claims 21-26, which purportedly were broader versions of certain of the issued claims. *Id*., p. 8. The Examiner issued an Office Action finding the "circuitry" limitations, including those in previously-issued claims 1-20, were means-plus-function limitations because "the claimed 'circuitry' are not seen to be modified [in the claims themselves] by 'sufficient structure,

material, or acts for performing the claimed function.'" *Id.*, pp. 79-80.[1] The Examiner also found

the claims invalid under Section 101. *Id.*, pp. 80-82. After IV contested these findings (*id.*, pp.

157-158), the Examiner issued a Final Office Action repeating his findings that all of the

"circuitry" limitations are means-plus-function limitations, and that those limitations are invalid

under Section 101. *Id.*, pp. 185-187. IV then abandoned the reissue application. *Id.*, pp. 246-247.

Thus, the fact that the Patent Office twice found the "circuitry" limitations are means-plus-

function limitations is compelling support for HP's position here.

### 4.    The "circuitry" terms lack corresponding structure in the specification.

The "circuitry" terms lack corresponding structure in the specification for performing the

recited functions, rendering those claims indefinite. "Structure disclosed in the specification

qualifies as 'corresponding structure' if the intrinsic evidence clearly links or associates that

structure to the function recited in the claim. Even if the specification discloses corresponding

structure, the disclosure must be of 'adequate' corresponding structure to achieve the claimed

function." *Williamson*, 792 F.3d at 1352 (citations omitted).

Tellingly, in its opening brief, IV does not identify any disclosed structures for the

functions recited in the nine circuitry limitations, because there are none. Rather than disclosing

actual circuitry, the specification discloses a simple block diagram (Fig. 4) depicting a set of

"black-box" modules and a few paragraphs of text that describe the <u>functions</u> of those blocks, not

their structure:

---

[1] The Examiner also (wrongly) found the specification disclosed sufficient corresponding structure, but provided no analysis linking the purported structure with the claimed functions.



The specification's description of these modules (quoted below) does not connote any structure because it only describes functions, not structures. In fact, all of the underlined words are verbs of action that do not connote any structure:

> Referring to FIG. 4, the scanner comprises a scanning flatbed 41, a scanning module 42, a logic operation module 43, a display module 44, and an evaluating module 45.
>
> The scanning flatbed 41 is for <u>supporting</u> an original. The scanning module 42 is for <u>scanning</u> the original to generate information.
>
> The logic operation module 43 is for <u>calculating</u> a location and a profile of an object in the original by use of an algorithm responsive to the information, wherein the algorithm can be updated and modified by external process.
>
> The display module 44 is for <u>displaying</u> a preview window corresponding to the original, wherein a confined area with a location and a profile in the preview window comprises the location and the profile of each object.
>
> The evaluating module 45 is for <u>receiving</u> a framed area selected from the preview window by the user, wherein a portion of the framed area beyond the confined area is automatically removed to generate the scan area.

'716 patent at 5:3-58 (emphasis added).

The following table lists each circuitry term and the recited function for each, in which the underlined portions are the portions of the function for which there is no disclosed structure linked to or associated with performing that portion of the function anywhere in the patent:

| Claim Term | Function (Portions Lacking Disclosed Structure Underlined) |
|---|---|
| "circuitry configured to generate a preview of a scanned original" | The recited function is "to generate a preview of a scanned original." *Compare* with '716 patent at 5:44-46. |
| "circuitry configured to determine a scan area based, at least in part, on a confined area associated with the one or more objects and on a removal of portions of the preview window that are beyond the confined area" | The recited function is "to determine a scan area based, at least in part, on a confined area associated with the one or more objects and on a removal of portions of the preview window that are beyond the confined area." *Compare with* '716 patent, 5:47-50. |
| "circuitry configured to scan the scan area after the portions are removed" | The recited function is "to scan the scan area after the portions are removed." *Compare with* '716 patent at 5:44-46. |
| "circuitry configured to generate a single profile for a plurality of objects" | The recited function is "to generate a single profile for a plurality of objects." *Compare with* '716 patent, 5:51-54. |
| "circuitry configured to generate a preview window of a scanned original comprising one or more objects" | The recited function is "to generate a preview window of a scanned original comprising one or more objects." *Compare with* '716 patent, 5:51-50. |
| "circuitry configured to identify portions of the preview window that are located outside of the confined area" | The recited function is "to identify portions of the preview window that are located outside of the confined area." *Compare with* '716 patent, 5:55-58. |
| "circuitry configured to define a scan area to include the profile with the portions removed" | The recited function is "to define a scan area to include the profile with the portions removed." *Compare with* '716 patent, 5:55-58. |

Thus, the Court should find that the "circuitry" terms are means-plus-function terms and that there is no disclosed structure for those limitations. Without any corresponding structure linked to the claimed function, the claims are indefinite.

## IV.    CONCLUSION

The Court should hold that "adjustable suppressing mechanism" term in the '819 patent is powered, and that the nine "circuitry" terms in the '716 patent are means-plus-function limitations for which there is no disclosed structure in the specification.

Dated:  February 25, 2021

/s/ John M. Guaragna
John M. Guaragna
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Telephone: (512) 457-7000
Facsimile: (512) 457-7001

Sean Cunningham (pro hac vice)
Erin Gibson (pro hac vice)
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Telephone: (619) 699-2700
Facsimile: (619) 699-2701

Brent Yamashita (pro hac vice)
Monica De Lazzari (pro hac vice)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303-2215
Telephone: (650) 833-2048
Facsimile: (650) 687-1138

David Yang (pro hac vice)
**HAWKINGSON YANG LLP**
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
Telephone: (213) 634-0370
Facsimile: (213) 260-9305

*Counsel for Defendant HP Inc.*

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 25th day of February, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3). Any other counsel of record will be served by a facsimile transmission and/or first class mail.

*/s/ John M. Guaragna*
John M. Guaragna

WEST\292996895.5